[PHILADELPHIA, APRIL 24TH, 1841.]

## WALTERS *against* SWALLOW.

### IN ERROR.

The defendant had endorsed a note for the accommodation of a prior endorser. When the note became due, A., the holder, called upon the prior endorser, who said he was unable to pay, and asked for time, and offered to give his note for the interest which would accrue upon the enlargement of time. The note was received by A. without application to the defendant; who however afterwards promised to pay the amount to the plaintiff, to whom A. had endorsed the note after it had become due. *Held*, (1) that the defendant was discharged by the conduct of the plaintiff; (2), that the promise to pay was without consideration, and not binding upon the defendant; (3), that the plaintiff could not maintain an action in his own name upon such new promise.

ERROR to the District Court for the City and County of Philadelphia.

This was an action of assumpsit by William N. Swallow against Peter B. Walters, upon a promissory note, dated the 26th day of July, 1837, for $508 44, at 90 days, drawn by David Swope, and endorsed by James Clark, Jr., and Peter B. Walters, the defendant.

On the trial before STROUD, J., on the 6th of April, 1840, the plaintiff having proved his case, the defendant called James Clark, Jr., who testified as follows:

" Sometime in the year 1837, Mr. Peter Walters endorsed this note for my accommodation. I then gave the note to Walters to get discounted. I was indebted to Mr. Walters; I was indebted to him over one hundred dollars. Walters kept the note for two weeks; he said he could not get funds without endorsing it. He did get it discounted by Jacob Swallow, the day the note became due. Swal-

(Walters *v.* Swallow.)

low called on me; I told him it was out of my power to pay they note; I wished him to take it up. He said he wanted the money, and had so told Walters. He agreed to extend the note for thirty days. I sat down to write a new note, and got it nearly written, when he said he was in a hurry and could not wait. I tore up the note I had partly written; I gave him the bank notice, and a due-bill for thirty days; this was in the afternoon. Swallow never called on me for payment of the due-bill. Mr. Walters did not know of the arrangement entered into by Swallow and myself. The due-bill was for two or two and a half per cent. per month." Being cross-examined, he said, "I have been discharged under the insolvent laws. I do not remember that Walters said that Swallow had discounted the note on his endorsement; he retained 100 or 150 dollars."

The plaintiff then called Jacob Swallow, who testified as follows:

"In August, 1837, Peter B. Walters and James Clark called on me with this note. Walters said, 'I have endorsed the note, and I wish you to advance the money on it.' I said that I had the money, and would loan the money, if it would be punctually paid when the note became due. I paid some of the money in bank notes. Walters asked me if I was going to draw a check, to draw it for $150, payable at the Northern Liberties Bank. I drew it to the order of Peter B. Walters. The check was dated August 10th, 1837. I drew a check for Clark for $295 32; this was not drawn to order. Walters took both. The day the note became due, I first went down to see Walters. He said he could not pay it, but could if he had a little time. I then went to Clark; he said he was not able to take up the note. He wanted to know if I would extend the time. He gave me a due-bill for thirty days after date. I told Walters that the note would be protested. He said he could pay the note if I would give him a little time. I did not agree to give a certain time. Walters came down to Brewster's office, and agreed to give a bond and mortgage for the amount of the note. This was before I sold the note to my son. No time was set between Clark and myself. I refused the thirty days. He said it was for interest, which would be due on the note. Walters said if I would give him a little time, he would pay it." Cross-examined.—"I cannot say when I left the due-bill with Mr. Brewster; cannot say if before or after suit brought."

The learned judge charged the jury,

1st. That an agreement between the first endorser (Clark,) and the holder of the note (Jacob Swallow,) when it became due, by which the time for the payment of the note was to be extended, if founded on sufficient consideration, and made without the consent of

the defendant (the second endorser,) would prevent the plaintiff, (who, it is agreed, took the note after it had become due,) from recovering in this action. But that such agreement, unless founded on sufficient consideration, would not prevent the plaintiff's recovery.

2d. That an agreement to grant an extension of time for payment, upon no other consideration than a due-bill for the amount of the mere legal interest calculated in reference to the stipulated time of extension, would not be a sufficient legal consideration to support the agreement, and would not bar the plaintiff's recovery.

3d. That if under the name of interest, the jury·believed.the due-bill had been given for a larger amount than the proper legal interest of six per cent. per annum, computed upon the stipulated time of the extension, yet this would not be a bar to the plaintiff's recovery; because no more of the due-bill could be legally exacted or recovered than the amount of the legal interest.

4. That if with full knowledge of the alleged agreement, by Jacob Swallow with Clark, to give the latter a time for the payment of the note beyond the period fixed by the note itself, the defendant promised to pay the note to said Swallow, this promise would bind the defendant; and the defence arising from the agreement to give time would not avail him.

The jury found for the plaintiff accordingly.

The following specifications of error were filed :

1. " Because the judge erred in charging the jury, ' that an agreement to grant an extension of time for payment upon no other consideration than a due-bill for the amount of the mere legal interest calculated in reference to the stipulated time of extension, would not be a sufficient legal consideration to support the agreement, and would not bar the plaintiff's recovery.'

2. The judge erred in charging ' that if, under the name of interest, the jury believed the due-bill had been given for a larger sum than the proper legal interest of six per cent. per annum, computed upon the stipulated time of extension, yet this would not be a bar to the plaintiff's recovery, because no more of the due-bill could be legally exacted or recovered than the amount of the legal interest.'

3. ' That if with full knowledge of the alleged agreement, of Jacob Swallow with Clark, to give the latter time for the payment of the note beyond the period fixed by the note itself, the defendant promised to pay the note to said Swallow, this promise would bind the defendant, and the defence arising from the agreement to give time would not avail him.' "

Mr. *M'Call,* for the plaintiff in error, cited *Okie* v. *Spencer*, (2 *Wharton's Rep.* 253.) *Klippinger* v. *Kreps*, (2 *Watts*, 45.)

(Walters v. Swallow.)

Mr. St. Geo. T. Campbell and Mr. Brewster, for the defendant in error, cited M'Lemore v. Powell, (12 Wheaton, 554.)  Hall v. Constant, (2 Hall's N. Y. Rep. 185.)  Pabodie v. King, (12 Johns. Rep. 425.)  Philpot v. Briant, (4 Bingham, 717 ; 15 Eng. Com. Law Rep. 126.)  Miller v. Holbrook, (1 Wendell, 317.)  Planter's Bank v. Sellman, (2 Gill & Johns. 230.)

The opinion of the court was delivered by

KENNEDY, J.—The case is very imperfectly stated in the paper book, which has been furnished of it ; but as I understand it, the following questions are presented for our consideration.  First, If the holder of a negotiable note, at the time it becomes payable, without the knowledge of a second endorser, calls upon the first endorser thereof for payment, who says he is unable to pay then, but wishes the holder to extend the time of payment for thirty days; and to induce him to do so, draws and delivers to him a second note, securing the payment of the amount of the interest that shall accrue or become due on the first note at the end of the thirty days, which is accepted of without objection, and retained by the holder ; will this amount to such an agreement, on the part of the holder, to give time to the first endorser for the payment of the first note, as will in law discharge the second endorser thereof ?  Secondly, will a promise, by an accommodation endorser to pay the first note, made after the acceptance, by the holder of the second note, be binding upon the endorser ?  And if so, will a subsequent transfer of the first note, by the endorsement of the holder, transfer also the right to the subsequent endorsee to recover in his own name the amount of money mentioned in the first note, from the endorser upon his promise made as aforesaid to pay it ?

In order to decide the first question, it will be proper to take into consideration the design and object for which the second note was given and accepted.  It is clear that the avowed object of the drawer, at the time of giving it, was, that he might obtain an indulgence of thirty days for the payment of the first note.  It appears that this was the only reason mentioned by either of the parties then for giving the second note ; and being accepted by the payee or holder of the first note, with a full understanding of the motive and purpose which influenced the drawer to give it, he must be considered as having agreed to give the thirty days indulgence asked for on the first.  An explicit declaration on his part, agreeing to give this indulgence, had he made it, could not be regarded as more satisfactory evidence of his assent in this respect, than is necessarily implied in his acceptance of the second note.  It is only upon the ground of his having granted the indulgence of thirty days for the payment of the first note, that his conduct in receiving the second can be justified ; for if he did not intend to allow or bind himself to

VOL. VI.—57

(Walters *v.* Swallow.)

grant it at the time, he intended to practice an unwarrantable deception upon the drawer, which the law will not countenance or permit him, after what he has done, to allege. Now if the agreement made after this sort, by the holder of the first note, to grant indulgence for the payment of it to the maker, without the consent of the endorser, and more especially an accommodation endorser, as it appears was the case here, be binding upon him, it is perfectly clear, according to all the authorities on the subject, that the endorser was thereby discharged from his liability to pay it. And why is not the agreement binding upon ·the holder of the note as well as the maker? For I presume it will not be denied that the latter was bound, and became liable to pay in discharge of the second note, the amount of the interest which otherwise would have accrued on the first note at the end of thirty days. The consideration for giving the second ·note, that is, the grant of indulgence, was clearly sufficient to support and make it binding. If then the agreement for indulgence was binding upon one of the parties to it, it must, according to the general rule, be so on both. It would be very inequitable and unjust if it were not so. The only reason given for its not being binding upon the holder, is that he could derive no possible advantage from it; because if he suffered the first note to lie over for the thirty days, without any agreement to do so, the maker and the endorser would both have been liable for the accruing interest upon it, as well as the principal. But notwithstanding this would have been so, yet it must be remarked, that if the first had not been paid with its accruing interest at the end of the thirty days, but remained unpaid afterwards, no interest could have been claimed of either the maker or endorser of it upon the interest which had accrued thereon at the close of the ·thirty days. But the holder by taking the second note, thereby secured to himself the right of demanding from the maker interest on the sum mentioned therein, commencing at the expiration of the thirty days, if it remained unpaid after that time, until paid, which was converting the interest for the thirty days on the first note into principal, and obtaining a right to demand interest upon it afterwards if it remained in arrears; that is, in other words, to demand and receive interest upon interest, which if received would have enlarged the sum that the holder would otherwise have been entitled to. And although it would have been but small, still it would have been an advantage or benefit to him of some value; and therefore was a sufficient consideration of itself to make the agreement for indulgence binding upon him. The circumstance of the drawer's having become insolvent, so that the agreement for indulgence is likely to produce a loss instead of a gain to the holder, can and ought not to have any bearing upon the question. It was for the holder to consider of that before he entered into the arrangement that he made. But having made it, he must be deemed to have elected to take the risk of loss upon himself, which might happen to

arise from the maker's becoming insolvent; and this he had an unquestionable right to do. There is also another view, if it were necessary, under which the acceptance of the second note might, perhaps, be held sufficient to bind the holder to forbear payment of the first for the thirty days. If the maker of the first, instead of giving the second, had paid the amount of the interest on the first in money for the thirty days, it will scarcely be denied that the holder after receiving it would have been bound to have waited for the thirty days. But in *Musgrave qui tam* v. *Gibbs*, it was ruled, that the giving up a second note for the payment of usurious interest on the first, was equivalent to a payment of it in money, and the usury thereupon was rendered complete. We therefore are of opinion that the District Court erred in their instruction to the jury on this question.

Now as to the second question. If, as has been shown, the endorser became discharged by the agreement of the holder to give time, from his liability under his endorsement of the first note, to pay it, his subsequent promise to do so would not be binding upon him, unless it can be shown that there was a sufficient consideration for making it. It appears from the evidence that he derived no benefit from his endorsing the note to the holder, who discounted it, except that he received out of the proceeds arising from the discount, payment of a debt of about one hundred and fifty dollars, owing to him by the maker; that otherwise the note was discounted for the benefit of the maker, who received the residue of the proceeds, amounting to two hundred and ninety-five dollars and thirty-two cents, and was to pay the whole amount of the note when it should become payable. He was therefor the real debtor; and the note may be considered as having been wholly discounted for his benefit alone. It cannot then be well said, under this view of the matter, after being discharged from all liability on his endorsement, that the endorser was under any obligation, either legal, equitable or moral, to pay the note; hence his promise to pay it afterwards, if he ever made any, must be considered purely gratuitous and without sufficient consideration to bind him. We therefore think that the District Court erred in their instruction to the jury on this point also.

But if it were binding, can the defendant in error, who was the plaintiff in the District Court, where the action was commenced and tried, recover upon the promise? It was not a promise made by the endorser to revive his endorsement, or former liability under it; but a separate and distinct promise to pay the amount of the note. There is therefore no pretence for claiming that the endorser can be held liable upon his endorsement: if liable at all, it must be on his subsequent promise. But this promise being merely verbal, is not assignable at common law; nor is it made so by statute; so that the plaintiff below, not being a party to the promise, nor the promise made for his benefit, cannot claim to recover upon it in this

(Walters *v.* Swallow.)

action, which is brought in his own name. This last question does not seem to have been raised in the court below; but being intimately connected with the second, it·could not well be passed without a notice. The judgment is therefore reversed; and a *venire de novo* awarded.

Judgment reversed; and a *venire de novo* awarded.