## Fonner v. McNurlin et al.

*James J. Purman,* for plaintiff.

*O. R. Hughes,* for administrators of terre tenant's estate.

SAYERS, P. J., May 15, 1933.—The mortgage on which this scire facias was issued is dated May 17, 1921, and it was made by George McNurlen, mortgagor, to Henry B. Fonner as mortgagee in the sum of $6,000, "payable in 12 equal annual payments, with interest at 6 percent payable annually, with the right to anticipate payment". The mortgage covers a tract of 100 acres of land in Washington Township, Greene County, Pa., excepting and reserving certain coal and mining rights, and one half of the oil and gas underlying the said tract of land, and is a common-law mortgage, given without bond to secure the payment of certain sums as therein set forth, and provides "that in case default be made at any time in the payment of said principal debt or sum, or of any instalment of interest, or of any part thereof, for the period of 30 days after the same shall become due and payable by the terms and conditions of said obligation as aforesaid, the whole of the said principal debt or sum then unpaid shall thereupon become due and payable, and a writ of scire facias may be issued forthwith on this mortgage and prosecuted to judgment, execution, and sale."

George McNurlen died April 1, 1924, leaving a widow and two children, and by deed of conveyance from his widow and son the whole title to the land bound by the mortgage became vested in Rachie White, a daughter of said decedent,

on June 4, 1927. She died intestate May 22, 1932, leaving to survive her a husband and children, who are named as defendants in this proceeding.

The scire facias sur mortgage was issued June 18, 1932, against the administrators of George McNurlen, the administrators of Rachie White, and her surviving husband and children as present owners. The balance of the mortgage claim, amounting to $2,750, with interest and 5 percent attorney's commission, became due, and demand was made for payment of the same and payment refused. The plaintiff seeks to obtain a judgment for the said amounts. The affidavit of amount due filed by plaintiff avers that default occurred in the payment of the instalments due May 17, 1927, 1928, 1929, 1930, 1931, and 1932, and that the interest on the balance of the mortgage remains unpaid since May 17, 1932.

John E. White and Lawrence A. White, administrators of Rachie White, filed an affidavit of defense averring as follows:

"1. That at the time that Rachie White purchased the tract of land bound by the lien of the mortgage, upon which the scire facias has issued in this case, Henry Fonner, mortgagee, promised and agreed with John E. White, as agent for his wife, that if she, the said Rachie White, purchased the said farm, the mortgage which he then had on the farm might stand until such time as she was ready to pay the same, provided the interest was paid regularly.

"2. That, relying upon the said promise and agreement, she, the said Rachie White, purchased the said farm and has paid the interest regularly each year as the same became due, together with $250 on the principal.

"3. That on June 16, 1927, the said Henry Fonner promised and agreed with the said Rachie White that the said mortgage stand until such time as they were ready to pay the same, and as an inducement to have her leave the mortgage stand he agreed with her that the interest from the year beginning May 17, 1927, should be 4 percent per annum instead of 6 percent per annum, which said agreement was in writing, and a copy of the same is hereto attached as exhibit 'A' and made a part hereof.

"4. That some time in the spring of 1930 the said Henry B. Fonner, as a further inducement to have the said Rachie White let him retain the said mortgage, promised and agreed with her that he would not ask her or demand that the principal of the said mortgage debt be paid during his, the said Henry B. Fonner's lifetime, or the lifetime of the wife of him, the said Henry B. Fonner, provided the interest was paid regularly as the same became due.

"5. And it is further averred that on each of said occasions she, the said Rachie White, had made arrangements to pay the said mortgage, but by reason of the said promises and agreements on the part of the said Henry Fonner, mortgagee and plaintiff, the same was not paid.

"6. That the interest on said mortgage has been regularly paid to May 17, 1932, and that, at the time the interest was paid in May 1932, Henry B. Fonner agreed that no part of the principal need be paid for one year from that date.

"7. Affiants deny that any demand was ever made upon the said Rachie White in her lifetime for the payment of any part of the principal that was not paid.

"8. As a further defense to the collection of the said mortgage at this time, or at any time in the way in which the mortgagee is attempting to collect the same, affiants believe and therefore aver and expect to be able to prove that the personal property of the said Rachie White, deceased, will not be sufficient to pay her debts, and that it will be necessary for the said administrators to sell said real estate to pay the debts of said decedent, and that, under the laws of this Commonwealth with reference to decedents' estates, they are entitled

to a reasonable time, to wit, 1 year, to sell the real estate where it is necessary to pay the decedent's debts and to settle the said estate.

"All of which matters and things they, the said administrators, believe to be true and therefore aver and expect to be able to prove."

The mortgagee and plaintiff entered a rule on defendants John E. White and Lawrence A. White, administrators of Rachie White, deceased, to show cause why judgment should not be entered for want of a sufficient affidavit of defense as to the whole of plaintiff's claim, and in support of the rule he filed the following specifications showing wherein the affidavit of defense is insufficient and praying for judgment:

"1. The affidavit of defense filed does not disclose any consideration whatever for the promises therein alleged, by reason of which such affidavit is wholly insufficient in law or equity to prevent judgment.

"2. Neither by plea nor defense have these defendants set up any matter founded upon consideration whereby the terms of said mortgage have been modified, changed, extended in time, or otherwise howsoever, by reason of which failure said defense is insufficient in law to prevent judgment.

"3. There is no allegation in the affidavit of defense filed that payment of the said mortgage debt or any part thereof has been made, save and except that for which credit has been allowed in this action, and there is no plea of payment, set-off, or other legal defense to the collection of said mortgage debt, interest, and attorney's commission.

"4. It is not alleged that the said mortgage debt is not due and payable or that default in payment has not been made.

"5. The affidavit of defense is wholly insufficient.

"Wherefore the plaintiff prays that judgment may be entered against the defendants for want of a sufficient affidavit of defense for the amount of said mortgage unpaid, with interest thereon and 5 percent attorney's commission, as set forth in plaintiff's declaration."

For the sake of this argument, it must be conceded that the facts alleged in the affidavit of defense are true, and that the parol agreements were entered into at the times and in the manner therein set forth, to the end that the payment of the balance due on said mortgage was to be deferred during the lifetime of the mortgagor Henry B. Fonner or his wife, provided the interest was paid regularly as it came due. The mortgage gave the right to anticipate payment, and at the time of George McNurlen's death 6 of the 12 annual payments had been made, and a $250 payment appears to have been made by Rachie White, now deceased, after she acquired title.

If the mortgagee induced Rachie White to purchase the land by promising her that if she did purchase it he would not demand any part of the principal as long as she paid the interest, and that was an inducement for her to purchase the land, the promise of the mortgagor was made on a sufficient consideration, and the promise on June 16, 1927, to reduce the interest beginning with May 17, 1927, to 4 percent instead of 6 percent per annum was a further inducement to have Rachie White allow the principal of the mortgage to stand without paying or anticipating payments of the same, as she had a right to do under the terms of the mortgage. If this agreement is proved as alleged, there was a sufficient consideration moving from Rachie White, owner and terre tenant, to Henry B. Fonner, the mortgagee, for his said promises, and if such promises are proved no principal on the mortgage is due until the death of the mortgagor and his wife, provided the interest of 4 percent is paid annually as it comes due; consequently there could be no default in the payment of

interest by the terms of the mortgage and the modified oral contract made thereon until June 17, 1933.

As defined in the Restatement of the Law of Contracts, sec. 75, "consideration for a promise is an act other than a promise, or a forbearance, or the creation, modification or destruction of a legal relation, or a return promise, bargained for and given in exchange for the promise." In Shoemaker, to use, v. Farrell, 64 Pa. Superior Ct. 34, it was held that an agreement to extend the time of payment of an overdue obligation must be based on a consideration, that such consideration may be a slight advantage to one party or a trifling inconvenience to the other, and that where the lien of a mortgage is restricted to a particular piece of land an agreement to extend the time of payment after maturity at a less rate of interest is based on a sufficient consideration, where it appears that the mortgagor binds himself to pay the amount due in instalments at specified dates.

The inducements held out by the mortgagee in this case, that if Rachie White purchased the land she would not be required to pay the balance of principal of the mortgage until the death of himself and his wife, and the subsequent agreement that if she did not exercise her right to pay the mortgage or to anticipate payments of it the mortgagee would reduce the interest to 4 percent, was a promise by the mortgagee, made on sufficient consideration. This is not the case of a partial payment of a debt after maturity, which of course is not sufficient consideration to support an agreement to extend the time of payment: Hartman v. Danner, 74 Pa. 36; Hecht v. Hecht, 301 Pa. 379; nor a payment of part of a debt, either principal or interest, before it is legally demandable, as a sufficient consideration to support an agreement to give time: Brush Hat Mfg. Co., Inc., v. Abeles, 45 Pa. Superior Ct. 243, 245. At the time of the purchase of the land by Rachie White, there was no default in the payment of the instalments of the mortgage or the interest, nor was there any default at the time the interest was reduced from 6 percent to 4 percent.

The Supreme Court has said in Presbyterian Board of Foreign Missions v. Smith, 209 Pa. 361, 363: "A test of good consideration is whether the promisee at the instance of the promisor, has done, forborne or undertaken to do anything real, or whether he has suffered any detriment or whether in return for the promise he has done something that he was not bound to do or has promised to do some act or has abstained from doing something." See also City Bank of York v. Rieker, 262 Pa. 28, 32; Commercial Finance Co. v. DeMartelly et al., 269 Pa. 354, 356; Walters v. Swallow, 6 Whart. 446; Restatement of the Law of Contracts, sections 75, et seq., and Pennsylvania annotations thereto.

This is not the case of an attempt to prove an oral modification of the written contract, but is an offer to prove an agreement between the mortgagee and a purchaser from the heirs of the mortgagor of the land, changing the written or mortgage contract, long subsequent to the date of the original mortgage. "This oral agreement, subsequently made, is provable, because, generally, parties may change their written contracts by parol: Tradesmen's Nat. Bank v. Cummings, 306 Pa. 280, 282 . . . Price v. Robbins, 298 Pa. 568, 571": Tomlinson, Trustee, v. Wilson, 310 Pa. 41.

It is the duty of the executors or administrators to make defense as the facts warrant; otherwise a balance due on the mortgage after the sale of the equity may result in a deficiency judgment to be paid from the estate generally, to the detriment of others. The administrators could have entered an appropriate plea and prevented judgment being entered against them, without filing an affidavit of defense: Federal Land Bank of Baltimore v. King et al., 294 Pa. 86.

It has been held that nothing short of payment or release is a valid defense: Mather v. Clark, 1 Watts 491. The Act of 1705, 1 Sm. L. 57, § 6, 21 PS § 791, however, provides that where the defendant in the scire facias appears, "he or she may plead satisfaction or payment of part or all the mortgage-money, or any other lawful plea, in avoidance of the deed or debt, as the case may require."

It has been suggested by counsel for plaintiff in his motion that there is no plea of payment, set-off, or other legal defense to the collection of said mortgage debt, interest, and attorney's commission. The defense in the affidavit, however, is that the mortgage according to its terms and the subsequent oral modifications made by the mortgagor was not due and payable, and there was no default at the time the scire facias was issued. The only formal plea that might be entered in addition to the affidavit of defense filed would be a plea of "non assumpsit".

"A vendee of the mortgaged premises to whom the agreement has been assigned has such a beneficial interest in the agreement that he may in equity assert it against an attempt to enforce the mortgage in violation of the agreement": Krum v. Grube, 6 D. & C. 65. If a vendee by an assignment of such agreement may assert such a defense, it seems that an agreement by a mortgagee directly with such vendee ought to be much more effective.

While it is not alleged in so many words, the affidavit of defense does allege that the time of payment of the balance on the mortgage, due to the extension granted by the mortgagee to the vendee by parol agreement, has not yet arrived. There can be no default according to this agreement until the death of Henry B. Fonner and his wife, provided the interest is paid regularly, and for the purpose of determination of this rule such an agreement has been entered into for a consideration of mutual benefit to the parties when the agreement was made. As we have already said, the interest was not due and there was no default at the time the scire facias was issued, and plaintiff is therefore not entitled to judgment for want of a sufficient affidavit of defense.

The defendants contend that the eighth paragraph of the affidavit of defense raises a question of vital importance both to the heirs and personal representatives of Rachie White, deceased, and to the creditors of her estate. Shall the mortgagee be permitted to proceed to judgment, execution, and sale regardless of any equity that may exist for the benefit of the heirs and creditors of the decedent? The defendants claim that they should be permitted to apply to the orphans' court and sell the real estate for the payment of debts, and it is implied in this argument that the court would have a right to restrain further proceedings on this mortgage pending a sale for payment of debts. "The policy of the law is to carry the settlement of the estates of decedents into that court, where the creditors as well as the heirs can come and contend for their rights, and if need be, assail the rights of others to recover, if their claims be unjust": Logan's Estate, 67 Pa. 335. "The distribution of a decedent's estate among creditors as well as legatees and distributees, belongs exclusively to the Orphans' Court, and creditors are bound to appear and claim their respective debts in this court, or be debarred from the distribution": Hammett's Appeal, 83 Pa. 392.

The defendants also allege that the speedy action on the part of the mortgagee, when there is no default, looks like an attempt to defeat creditors and heirs of their right to share in the equity in the real estate, and in support of their denial of the right of the plaintiff to proceed on his mortgage under the circumstances in this case the defendants cite the case of Jones's Estate, 275 Pa. 143, as authority for their right to schedule the mortgage as a debt and sell

the real estate for the payment of debts, quoting from the syllabus as follows: "The fact that a mortgage lien will be discharged by a sale, necessarily implies the right to include the debt secured thereby as one for the payment of which the sale is ordered.

"Where the personal property of a decedent is insufficient to pay debts, including a mortgage debt, and the mortgagee, under the Acts of May 19, 1893, P. L. 110, and June 7, 1917, P. L. 447, files a stipulation that the sale shall be made divested of the lien of the mortgage, the orphans' court will direct a sale of the decendent's real estate for payment of debts."

As further authority in support of their contention the defendants quote from Young's Estate (No. 1), 28 Dist. R. 814, wherein it is held that where executors are proceeding without delay under section 16 of the Fiduciaries Act of 1917 to sell real estate for the payment of debts, it appearing satisfactorily to them that the personal estate is insufficient to pay the debts, the petition for such sale will have priority over a petition for partition filed by the husband and heirs. See, also, Clark's Estate, 134 Pa. 140, 142, where it is suggested that a partition proceeding was premature because it gave no time to the executors to take the necessary steps to administer the estate and adjust and liquidate the indebtedness, and burdened the estate with unnecessary expense.

If it turns out in the trial of this case that the mortgage was not due at the time the scire facias was issued, the defendants of course could proceed on petition to sell the real estate for the payment of debts subject to the lien of the mortgage, but, unless the plaintiff agreed, the land could not be sold so as to discharge the lien of the mortgage. Section 15 (h) of the Fiduciaries Act of 1917, 20 PS § 528, declares that nothing in that section relating to the sale of land for the payment of debts shall in any way affect or impair the lien of any mortgage given and executed and recorded during the lifetime of any decedent, but that the mortgage bond shall be subject to all the provisions of the act; and section 15 (k) relating to stay of execution provides: "In every case of an execution against the executors or administrators of a decedent, whether founded upon a judgment obtained against such decedent in his lifetime or upon a judgment obtained against them in their representative character, if it shall be made to appear, to the satisfaction of the court issuing such execution, that there is reason to believe that the personal assets and the rents of real estate are insufficient to pay all just demands upon the estate, such court shall thereupon stay all proceedings upon such execution until the executors or administrators shall have made application to the proper orphans' court for the sale of the real estate of the decedent, or for the apportionment of the assets, or both, as the case may require."

This section is practically the same as section 35 of the Act of February 24, 1834, P. L. 70, under which it was decided in Dundas v. Leiper, 1 Phila. 569, that a levari facias on a mortgage is not within the provisions of the Act of 1834. It was also held, since the passage of the Fiduciaries Act of 1917 by Judge Evans of Allegheny County, in Beilstein v. Dollar Savings & Trust Co., 75 Pitts. L. J. 817, that "a petition to stay execution on a lev. fa. on a judgment on a sci. fa. sur mortgage on the property of a decedent by one having a suit pending against the estate on a note until application could be made to the Orphans' Court for the sale of the property and settlement of decedent's debts was refused, where the estate was insolvent and the postponement would only result in piling up costs and expenses" and, that "Section 35 of the Act of 1834 and section 15 of the Fiduciaries' Act of 1917 do not apply to a lev. fa. on a judgment recovered on a sci. fa. on a mortgage."

In the case of the Penna. Door and Sash Co. v. Fassnacht Estate et al., 14 D..& C. 529, the question involved was a stay of execution on a judgment obtained by creditors against the personal representatives until an application was made to the orphans' court to sell decedent's personal property. This raises an entirely different question from that of the right of the court to restrain a mortgage creditor from pursuing his mortgage to judgment and execution. The court is of the opinion now that if it should turn out that the defendants were in default at the time the sci. fa. was issued in this case, it has no authority to interfere with plaintiff's right to recover a judgment and to issue a levari facias thereon. That question, however, is not raised at the present time and no action or decision of the court with reference thereto is in order.

## Order

And now, May 15, 1933, after due consideration and for the reasons above set forth, the rule for judgment for want of a sufficient affidavit of defense is discharged.
From S. M. Williamson, Waynesburg, Pa.